J-A03027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SYEEN HILL | |
| Appellee | No. 1080 MDA 2016 |

Appeal from the Order Entered June 16, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0005746-2015

BEFORE:  LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                **FILED JUNE 12, 2017**

The Commonwealth appeals the order of the Court of Common Pleas of Lancaster County entered on June 16, 2016, granting Appellee Syeen Hill's motion to suppress evidence obtained from the search of his residence.  The Commonwealth argues the suppression court erred in finding the search warrant failed to set forth probable cause to search Appellee's residence.  We agree.  Accordingly, we reverse and remand.

The underlying facts are not at issue here.  ***See*** Suppression Court Opinion, 6/16/16, at 1-5.  Briefly, "based on the information supplied by [two] informants and the information gather[ed] through the officers' surveillance of [Appellee], there was a fair probability that [Appellee] was a drug dealer who sold his drugs on the streets of Lancaster City, that he used his vehicle, a 2003 Chevrolet Impala, to facilitate some of his drug sales,

and that he continued to engage in criminal activity up to the time that warrant was issued." *Id.* at 9. Accordingly, the suppression court denied Appellee's motion to suppress to the extent it sought to suppress the evidence recovered from the search of Appellee's person and vehicle. However, the suppression court granted Appellee's motion to suppress to the extent it challenged the search of his residence. The suppression court, as noted, found the Commonwealth failed to present evidence sufficient to support issuance of a warrant to search Appellee's residence. This appeal followed.

On appeal, the only issue is whether the Commonwealth presented sufficient evidence to justify issuance of a search warrant of Appellee's residence. Commonwealth's Brief at 4.

> When reviewing an [o]rder granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012) (quoting *Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008)).

The suppression court stated that

> a finding of a confidential informant's reliability does not end [the suppression court]'s analysis of whether the search warrant

was adequately supported by probable cause. Instead, the four corners of the affidavit must contain sufficient facts to permit an issuing authority to reasonably conclude that there was contraband in the locations that were the subject of the search warrant.

Suppression Court Opinion, 6/16/16, at 9.

The above-quoted language is indicative of the multiple errors committed by the suppression court in addressing the matter. First, it shows that the suppression court applied an incorrect standard for reviewing the issuing authority's probable cause determination.

According to our Supreme Court, when deciding whether to issue a search warrant, "the task of the issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 925 (1986), *quoting* **Illinois v. Gates**, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, as our Supreme Court held, with respect to a court that is reviewing an issuing authority's probable cause determination:

> [the] reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant . . .. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655 (2010) (internal citations, quotations, and corrections omitted).

- 3 -

*Commonwealth v. Gagliardi*, 128 A.3d 790, 794 (Pa. Super. 2015) (footnote omitted).

From the above-quoted language of the suppression court's opinion, it seems clear that the suppression court erroneously conducted a *de novo* review of the magistrate's determination, as opposed to determining whether there was substantial evidence in the record to support the decision to issue a warrant. *Id.*

The suppression court not only erroneously engaged in a *de novo* review of the issuing authority's probable cause determination, it also failed to give deference to the issuing authority's probable cause determination, failed to view the totality of circumstances in a practical, common-sense manner, and possibly held the Commonwealth to a higher burden than probable cause. Indeed, the suppression court acknowledged that "during one of the controlled purchases[, Appellee] was observed leaving his home to sell drugs and then observed returning to his home immediately thereafter." Suppression Court Opinion, 6/16/16, at 12. However, it also noted that "this fact, when viewed under the totality [of the circumstances], does not support with any reasonable amount of certainty that any criminal behavior was going on inside [Appellee]'s home." *Id.*

The paragraph of the affidavit of probable cause describing the controlled purchase mentioned by the suppression court reads as follows:

> [D]uring the week of 18 October 2015, CI #1 made a controlled purchase of a quantity of cocaine from [Appellee], from 47

Caroline St. #2 Lancaster, PA.[1] This purchase was made under the direction and control of your [a]ffiant using DFT/DA funds. Your [a]ffiant and Detectives Kunkle and Vance of the Lancaster County Drug Task Force conducted surveillance of [Appellee] exiting 47 Caroline St. #2 Lancaster PA, meeting with CI #1 and then going back to 47 Caroline St. #2 Lancaster PA. CI#1 was searched before the controlled purchase with negative results for contraband. After completing the controlled buy, CI #1 met with your [a]ffiant and turned over a quantity of cocaine. CI #1 was then searched again with negative results for contraband. Your [a]ffiant conducted a field test on a quantity of the cocaine and a positive result was obtained.

N.T. Suppression Hearing, 4/6/16, at Commonwealth's Ex. 1 ("Affidavit") at ¶ 12.

In the paragraph immediately preceding the one just quoted, the affiant also stated:

[D]uring the months of September and October 2015 your affiant conducted surveillances at 47 Caroline St. #2, Lancaster County, PA. During these surveillances your affiant observed a silver 2003 Chevrolet Impala sedan, assigned Pennsylvania registration JYG-5505, parked in the parking lot next to 47 Caroline St. #2, Lancaster County, PA. [Appellee] was observed exiting 47 Caroline St. #2, Lancaster County, PA, and getting into and operating the [vehicle]. Your [a]ffiant also observed [Appellee] meeting with unknown subjects on foot and in his vehicle in areas around 47 Caroline St., Lancaster PA for short periods of time. Your [a]ffiant observed this short term traffic on multiple occasions and this activity is consistent with drug sales.

*Id.* at ¶ 11.

---

[1] Appellee does not argue that he did not reside at that address. **See generally** Appellee's Brief.

As noted above, the suppression court concluded that the affidavit of probable cause did not establish a nexus between Appellee's residence and the sale of contraband. We disagree. Viewing the totality of circumstances in a practical, common-sense manner, we conclude that substantial evidence supports the magistrate's probable cause determination.

It is undisputed that Appellee resided at 47 Caroline Street, Apt #2, Lancaster, and that there was a fair probability that he was a drug dealer selling drugs in Lancaster city. *See* Suppression Court Opinion, 6/16/16, at 9. The affidavit also states that Appellee was seen on multiple occasions on foot, around his residence, meeting with unknown individuals for short period of times, an activity consistent with the sale of contraband. *See generally* Affidavit. On one occasion, the controlled purchase mentioned by the suppression court above, Appellee was seen exiting his residence, meeting and providing the confidential informant cocaine, and then returning to his residence. Affidavit at ¶ 12. Finally, it appears the suppression court did not consider affiant's training and experience in dealing with illegal drugs. Indeed, in the affidavit, the officer stated that drug dealers often keep contraband in their residences. Affidavit at ¶ 2. Viewing these facts in a practical, common-sense manner, we conclude that these facts constitute sufficient evidence that Appellee was using his residence as the base for his illicit operations.

In a similar case, **Commonwealth v. Clark**, 28 A.3d 1284 (Pa. 2011), our Supreme Court noted:

> The "trial court [] discounted the common sense import of the fact that after the controlled buy was arranged, the police observed Appellee leave his residence in his vehicle, [] drive to a location, conduct the transaction, and immediately return to his residence. This fact certainly connected the illegal transaction to Appellee's residence, in a common sense, non-technical way, and permitted the issuing authority to conclude that drugs would likely be found in the residence.

**Id.** at 1291.

In **Commonwealth v. Davis**, 595 A.2d 1216 (Pa. Super. 1991), we similarly found informant's observations of defendant making three drug sales in the street and entering a particular residence after concluding each sale, and, also defendant's claim that he had just received a shipment of drugs, furnished adequate probable cause for a search warrant of defendant's home.

In light of the foregoing, therefore, we find that the suppression court's reasoning that perceived no connection between the transaction and Appellee's residence was flawed. Therefore, we conclude that the issuing authority had a substantial basis for determining that there was a fair probability that contraband would be found at Appellee's residence, and, that the suppression court, by discounting portions of the affidavit of probable cause and conducting its own review of the evidence proffered by the Commonwealth, failed to give deference to the issuing authority's probable cause determination.

The suppression court also stated that the Commonwealth's evidence failed to show "with any reasonable amount of certainty that any criminal behavior was going on inside [Appellee's residence]." Suppression Court Opinion, 6/16/16, at 12. We note the Commonwealth must show and prove that "there is a fair probability that contraband or evidence of a crime will be found in a particular case," not that there was a "reasonable amount of certainty" that criminal behavior was going on inside Appellee's residence. *See Gray*, 503 A.2d at 925. To the extent the suppression court held the Commonwealth to a burden higher than "probable cause" the suppression court erred.

Finally, in support of its ruling, the suppression court relied on *Commonwealth v. Kline*, 335 A.2d 361 (Pa. Super 1975) (*en banc*) and *Commonwealth v. Way*, 492 A.2d 1151 (Pa. Super. 1985). In *Gagliardi*, this Court distinguished *Kline* and *Way*.

> However, neither opinion controls the resolution in the case at bar. Certainly, in *Kline*, this Court held that the affidavit of probable cause failed to establish a nexus between the drug dealer's apartment and the contraband because the affidavit omitted certain facts concerning the single, private transaction between the drug dealer and two girls. We held that these omitted facts included: "where the transaction [between the dealer and the two girls] took place, how long it took, how long [the dealer] was gone, [and] what led the girls to conclude that he had gone to his apartment [to retrieve the drugs]." *Kline*, 335 A.2d at 364. In the case at bar, however, we are dealing with [one] controlled transaction[]—that w[as] witnessed by the police and recounted, in detail, in the affidavit of probable cause. Further, the affidavit in the case at bar clearly recites "where the [controlled] transaction[] took place" and "what led [the police] to conclude" that [appellant] left his home prior to the drug sales

- 8 -

and then returned to his home after the drug sales. *See id. Kline* is thus inapposite to the facts of this case.

Moreover, *Way* is of even less persuasive value than *Kline.* In *Way,* the affidavit of probable cause merely declared that: the defendant was a drug dealer; an "alleged [drug] transaction occurred in [the defendant's] blue van along a country road[; and, a]fter the alleged [drug] transaction, police followed the blue van to a driveway of a property" that was owned by the defendant. *Way*, 492 A.2d at 1152–54. Confronted with this affidavit, the *Way* Court held that there were "[insufficient] facts to believe that drugs would be found" in the defendant's house and that the search warrant for the defendant's house was thus defective. *Id.* at 347. *Way* is inapplicable to the case at bar. Indeed, in *Way,* the totality of the circumstances demonstrated that the defendant's base of operations for his drug dealing was his blue van—while in the case at bar, the facts establish that the [Appellee]'s base of operations for his drug dealing was his [residence].

*Gagliardi*, 128 A.3d at 798. Accordingly, for the same reasons stated in *Gagliardi*, we also conclude that the suppression court's reliance on *Kline* and *Way* was misplaced.

The suppression court also found the Commonwealth's reliance on *Davis* was misplaced because here, as opposed to *Davis*, there was not sufficient evidence to link Appellee's residence with the sale or storage of drugs. In particular, the suppression court noted that neither informant alleged that Appellee was selling drugs from his home or that he was using his home to store drugs, that neither informant indicated being inside Appellee's residence or even knew Appellee's address, and that the information provided in the affidavit would instead indicate that Appellee was selling drugs out of his vehicle. Suppression Court Opinion, 6/16/16, at 12.

Finally, the suppression court noted that the instant case was also distinguishable because the quantity of cocaine involved in *Davis* was substantial, which led to the inference that defendant in *Davis* was keeping the drugs at his place. Here, however, the suppression court reasoned, there is no indication of quantity "to support the inference that [Appellee] was necessarily storing the drugs in his home." *Id.* at 13.

The determination whether there was probable cause to believe Appellant sold drugs out of his residence or used his residence as a storage location must be made by the issuing authority in light of the information available, not in light of the information not present. The missing information, while useful, is not determinative of the existence of probable cause. Here, as noted above, looking at the information available in a common sense, non-technical way, there was enough information to permit the issuing authority to conclude that drugs would likely be found in Appellee's residence.

Regarding the suppression court's observation that the information available would suggest that Appellee was running his business out of his car, rather than out of his residence, we note that, although the circumstances of some transactions potentially pointed to Appellee's vehicle as a storage location for the drugs, "the law does not require that the information in a warrant affidavit establish with absolute certainty that the object of the search will be found at the stated location, nor does it demand

that the affidavit information preclude all possibility that the sought after article is not secreted in another location." **Davis**, 595 A.2d at 1222.

In light of the foregoing, we conclude that the issuing authority had a substantial basis for determining that there was a fair probability contraband would be found at Appellee's residence. Thus, we vacate the suppression court's order at issue here and remand.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Dubow joins this memorandum.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017