J-S95023-16

2017 PA Super 408

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC TORRES | |
| Appellant | No. 2241 EDA 2015 |

Appeal from the Judgment of Sentence July 8, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011169-2013
CP-51-CR-0011170-2013
CP-51-CR-0011171-2013
CP-51-CR-0011172-2013
CP-51-CR-0011173-2013

BEFORE: STABILE, J., MOULTON, J., and MUSMANNO, J.

CONCURRING OPINION BY MOULTON, J.:   **FILED DECEMBER 22, 2017**

I agree with the majority that the Commonwealth's affidavit of probable cause failed to establish a sufficient nexus between the crimes under investigation and the search proposed in the warrant.[1]  I write separately, however, to note my concern about the broad application of two of this Court's decisions from over 30 years ago -- ***Commonwealth v. Kline***, 335 A.2d 361 (Pa.Super. 1975) (*en banc*), and ***Commonwealth v. Way***, 492 A.2d 1151 (Pa.Super. 1985).

---

[1] I agree with the majority that the trial court properly denied Torres' motion to sever and that we need not reach the sentencing issues because the judgment of sentence is vacated.

*Kline* and *Way* both addressed warrants to search the homes of suspected drug dealers. In each case, we found insufficient evidence of a connection between the illegal activity – selling drugs outside of the home – and the home itself to provide probable cause to search the defendant's home for drugs. In *Kline*, this Court affirmed a trial court's conclusion that the affidavit did not contain probable cause to search the appellee's home. 335 A.2d at 364. We noted that the affidavit merely stated the informants' unsupported conclusion that drugs were in the appellee's apartment and did not "set forth how information leading to such a conclusion was obtained." *Id.* Further, "[t]here [wa]s no indication of where the transaction took place, how long it took, how long [appellee] was gone, or what led the girls to conclude that he had gone to his apartment." *Id.* We concluded that, although the information tended to establish the appellee was a drug dealer, it did not support a conclusion that the appellee "kept drugs in his apartment." *Kline*, 335 A.2d at 364.

Similarly, in *Way*, this Court found the affidavit did not contain sufficient facts to believe drugs would be found at a particular location when: the informant arranged the drug transaction by phone; the transaction occurred in a blue van along a country road; the police followed the blue van to a driveway of a property at the corner of Douglas Drive and Glendale Road; the informant identified appellant as the driver of the blue van; and a police source told the affiant that appellant lived at the intersection of Douglas Drive and Glendale Road. *Way*, 492 A.2d at 1154.

*Kline* and *Way* offer two important lessons relevant to this matter. First, "[p]robable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." *Kline*, 335 A.2d at 364. In other words, the affidavit must support the finding of a nexus between the criminal activity and the home. Second, evidence of drug dealing unconnected to a home does not, without more, give probable cause to believe that additional contraband will be found in the home. *Cf. Commonwealth v. Gagliardi*, 128 A.3d 790, 798 (Pa.Super. 2015) (distinguishing *Kline* and *Way* where affidavit contained information regarding where the transactions took place and what led police to conclude defendant left his home prior to, and returned home after, drug sale). The latter point is based in part on the common sense notion, reinforced by experience, that drug dealers often take pains to store their drugs away from their homes. *Cf.* Wayne R. LaFave, Search and Seizure, § 3.7(d), text accompanying footnote 210 (October 2016 update) (noting that drugs are "inherently incriminating" and "readily concealable in other possible hiding places" and therefore less likely than stolen property to be found in a suspect's home). "Indeed, in *Way*, the totality of the circumstances demonstrated that the defendant's base of operations for his drug dealing was his blue van," not his home. *Gagliardi*, 128 A.3d at 798.

In contrast to the drugs sought in *Kline* and *Way*, here the affidavit claimed probable cause to believe that ammunition, gun boxes/containers, or ballistics evidence consistent with the gun found at the scene would be found

at Torres' home. Unlike drugs, guns are not inherently incriminating, ***see, e.g., Staples v. United States***, 511 U.S. 600, 610 (1994) (noting "long tradition of widespread lawful gun ownership by private individuals in this country"), and neither experience nor common sense suggests that we should presume gun owners will take pains to keep evidence of such ownership out of their homes. ***Cf.*** LaFave, Search and Seizure, § 3.7(d), at text accompanying note 214 ("Where the object of the search is a weapon used in the crime or clothing worn at the time of the crime, the inference that the items are at the offender's residence is especially compelling . . . ."). Indeed, this Court has stated that guns are the type of evidence "reasonably likely to be found in the perpetrator's home." ***Commonwealth v. Hutchinson***, 434 A.2d 740, 743 (Pa.Super. 1981).

Based in part on this gun / drug distinction, the Commonwealth argues that the issuing authority properly concluded that, because Torres was found in possession of a gun just a few blocks from his home, it was reasonable to infer that some evidence of his connection to the gun, be it ammunition, containers, or otherwise, would be located at his home.[2] I agree with the

_____

[2] Several courts have confronted the question whether probable cause exists under similar facts and said yes. ***See, e.g., United States v. Williams***, 544 F.3d 683, 688 (6th Cir. 2008) (holding issuing authority could infer defendant kept handgun at residence where affidavit had evidence that defendant possessed multiple guns and recently had used them to further criminal activity); ***United States v. Jones***, 994 F.2d 1051, 1056-57 (3d Cir. 1993) (noting that cash, clothing and firearms are type of evidence likely to be stored at suspect's residence); ***Iowa v. Gathercole***, 553 N.W.2d 569, 574

Commonwealth that the logic of **Kline** and **Way**[3] -- that drug dealers should

not be presumed to store drugs at their homes – does not apply with equal

_____

(Iowa 1996) (finding probable cause to search home and noting it was "reasonable to infer that stolen property would be found at a defendant's residence" and "reasonable to believe that guns will be kept on the subject's person or in his residence"); **Maryland v. Ward**, 712 A.2d 534, 537 (Md. 1998) (probable cause to find nexus between evidence of murder and noting prior case "uph[eld a] warrant based on police allegation of a crime, knowledge of the suspect's address, detailed description of the weapon and absence of weapon on suspect at time of arrest" (quoting **Maryland v. Mills**, 363 A.2d 491 (Md. 1976))).

[3] I note that **Kline** and **Way** were both decided over 30 years ago. While they have not been overruled and remain good law, I also note that many more recent cases in other jurisdictions have been less rigid in requiring an express evidentiary nexus between drug dealing outside the home and the home itself, particularly when the affiant draws the connection based on experience. **See, e.g., United States v. Cardoza**, 713 F.3d 656, 660-61 (D.C. Cir. 2013) (finding that because there was probable cause to believe defendant was involved in drug trafficking, there was probable cause to search home, noting affiant stated that in his experience traffickers often keep additional supplies of drugs, weapons, and cash at their residences, and concluding that "[w]hen there is probable cause that a defendant is dealing drugs, there often tends to be probable cause that evidence of that drug dealing will be found in the defendant's residence"); **United States v. Biglow**, 562 F.3d 1272, 1280, 1283 (10th Cir. 2009) (noting that magistrate judges "may 'rely on the opinion' of law enforcement officers" as to where evidence linking defendant to criminal activity may be located, may rely on "additional evidence" linking criminal activity to residence, and may rely on "normal inferences" about location of evidence, and concluding that affiant's statement in affidavit that "drug dealers often keep evidence related to their illegal activities at their homes" provided "additional evidence necessary to establish a nexus between" suspected drug trafficking activities and defendant's residence); **United States v. Keele**, 589 F.3d 940, 944 (8th Cir. 2009) (finding probable cause to search home where evidence of drugs found in car and experienced opinion of agent stated drug manufacturers often keep contraband and proceeds at home); **Minnesota v. Yarbrough**, 841 N.W.2d 619, 623-24 (Minn. 2014) (noting "it may be reasonable to infer that drug wholesalers keep drugs at their residence," and finding sufficient nexus where

force to the storage of firearms and ammunition related to criminal activity. Nevertheless, the failure of the affidavit in this case to make any connection between gun use for criminal purposes and the possession of related evidence in the gun user's home is a fatal flaw.[4] Accordingly, I agree with the majority that we must vacate Torres' judgment of sentence.

_____

affidavit stated reliable informant informed police that defendant was cocaine dealer, defendant brandished handgun because someone had stolen large amount of cocaine from him, and defendant had been previously arrested for PWID); **see also** LaFave, Search and Seizure, § 3.7(d).

[4] The affidavit in this case contains no statement from the affiant about his (or any other officer's) experience in investigating gun possession cases that would draw the issuing authority's attention to the likelihood of finding gun evidence in Torres' home. Had such information been included, as it often is, **see, e.g., Commonwealth v. Lyons**, 79 A.3d 1053, 1064 (Pa. 2013) (finding probable cause to search apartment where affidavit averred deceased was in contact with defendant prior to murder, that they had been in an extramarital affair, and defendant "went on the run," and that in officer's experience defendant's home likely would reveal trace evidence of crime); LaFave § 3.7(d), at text accompanying note 198, Torres' argument would have been much weaker.