COMMONWEALTH of Pennsylvania,
Appellant

v.

Marcos M. GUTIERREZ, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 15, 2011.

Filed Jan. 24, 2012.

Anne F. Palmer, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Elliott M. Cohen, Philadelphia, for appellee.

BEFORE: BENDER, MUNDY and FITZGERALD*, JJ.

OPINION BY BENDER, J.:

This is a Commonwealth appeal from the order of the trial court granting Marcos M. Gutierrez's (Defendant) motion to suppress physical evidence. For the reasons that follow, we reverse.

The trial court summarized the factual and procedural history of this case as follows:

In July 2010, Gutierrez, through counsel, filed a motion seeking to suppress illegal narcotics found on his person by the Philadelphia Police. Gutierrez claimed that the police did not have the reasonable suspicion required to stop his car because the police acted pursuant to a vague and uncorroborated tip from a first-time informant. In response, the Commonwealth argued that the stop and the search were lawful. On August 25, 2010, this Court granted the motion to suppress. On September 24, 2010, the Commonwealth filed [a] Notice of Appeal.

I. Factual Findings

The following facts were established at the suppression hearing. In the early afternoon of September 3, 2009, Police Officer Liciardello received a tip from a confidential informant ("CI"). The CI provided his name and address to Officer Liciardello but the police had not previously tested the reliability of the CI by acting on information that he had supplied, nor was the supplied address verified. Officer Liciardello claimed he would be able to locate the CI again if the name and address the CI had given him were correct. He did not testify he would be able to find the source, if his information were to prove untrue. The CI informed Officer Liciardello that a Hispanic male carrying heroin and operating a white Chevrolet car would be on the 400 block of Bristol Street that day in Philadelphia between 1:30 and 2:00 PM. The CI provided no further details; there was no explanation of the source of the CI's information.

Officer Liciardello and the CI drove to the 400 block of Bristol Street. At approximately 1:45 PM, Officer Liciardello observed Gutierrez driving by in a white Chevrolet. The CI identified Gutierrez as the man with the heroin. Officer Liciardello called for backup and ordered Gutierrez to stop. Officer Liciardello testified that he ran up to white Chevrolet while yelling "[p]olice, turn off the car." (N.T. 8/23/10, pp. 10–13, 18–19). Officer Liciardello further testified that Gutierrez responded by trying to back up, but was boxed in by an unmarked police backup vehicle driven by Officer Spicer. Officer Spicer testified that after other officers approached Gutierrez's car and after Officer Liciardello

---

* Former Justice specially assigned to the Superior Court.

had ordered Defendant to stop, Gutierrez tried to back up and collided instead with the unmarked police car. There was no testimony of damage to the unmarked police car. Officer Spicer testified that he then removed Gutierrez from his car and patted him down. Officer Spicer felt a bulge in Gutierrez's pocket and asked Gutierrez what it was. Gutierrez replied, "I'm in a lot of trouble." Thereupon, Officer Spicer reached into Gutierrez's pocket and removed an object which contained 106 grams of heroin.

Trial Court Opinion (T.C.O.), 3/7/11, at 1–3 (footnote omitted). Following the grant of Defendant's motion to suppress, the Commonwealth filed this appeal presenting one question for our review:

Did the lower court err in suppressing evidence based on the court's erroneous belief that police acting on information provided by an identified informant lacked reasonable suspicion to stop defendant?

Brief for Commonwealth at 4.

■■■ Our scope and standard of review in this case is as follows:

When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa.Super.2008) (citations omitted).

■■■ The trial court granted Defendant's motion to suppress based on the court's conclusion that the police stopped him without reasonable suspicion.

Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (citations omitted).

■■■ In the instant case, there is no doubt that Officer Liciardello subjected Defendant to an investigative detention. Officer Liciardello yelled at the Defendant to turn off his car. This type of an order effectuates a seizure, as no reasonable person in Defendant's situation would have felt free to leave at that point. *See Commonwealth v. Smith*, 732 A.2d 1226, 1232 (Pa.Super.1999) (stating that whether a seizure has been effected hinges on "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter").

■■■ As Defendant was subjected to a seizure, the police were required to possess reasonable suspicion to support the stop.

The determination of whether an officer had reasonable suspicion that crimi-

nality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. It is the duty of the suppression court to independently evaluate whether, under the particular facts of a case, an objectively reasonable police officer would have reasonably suspected criminal activity was afoot. As the United States Supreme Court has explained:

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple " 'good faith on the part of the arresting officer is not enough.' * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police.["]

*Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa.2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) (citations omitted).

■■■ On appeal, the Commonwealth argues that the totality of the circumstances in the instant case provide more than adequate grounds to establish a reasonable suspicion of criminal activity. We agree. First, the information was provided to the police in person by an individual who identified himself. *See Commonwealth v. Hayward*, 756 A.2d 23, 36 (Pa.Super.2000) (stating, "**Identified** citizens who report their observations of criminal activity to the police are assumed to be trustworthy, in the absence of special circumstances."). Contrary to the opinion of the trial court, it is of little consequence that the police did not investigate this person's identity or confirm his address. Rather, the salient point is that this was not an anonymous tip.

Second, the information was predictive in nature, as it forecasted the movement of the suspect in question by placing him at a particular time and place, driving a white Chevrolet. This type of information has a high indicia of reliability. "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

Third, the identified informant remained with Officer Liciardello while he confirmed the information provided. Thus, during the one half-hour timeframe specified by the informant, and at the location described, a white Chevrolet appeared driven by Defendant, whom the informant then identified as the suspect who would be carrying narcotics. This confirmation of the informant's predictive information further suffused his tip with reliability. *See*

*Commonwealth v. Griffin,* 954 A.2d 648, 652 (Pa.Super.2008) (stating that an informant's reliability is strengthened if the police are able to confirm predictive information).

When we consider the totality of the circumstances, we conclude that Officer Liciardello reasonably suspected that criminal activity was afoot after the informant identified the driver of the white Chevrolet as the suspect in question. Accordingly, the stop was legal, and the trial court erred in granting Defendant's motion to suppress.

Order Reversed. Case Remanded for further proceedings consistent with this decision. Jurisdiction Relinquished.