J-A26008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHAEL L. JOHNSON, | |
| Appellee | No. 721 WDA 2015 |

Appeal from the Order Entered April 9, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0017177-2014

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 22, 2016**

The Commonwealth appeals from the trial court's April 9, 2015 order granting Michael L. Johnson's motion to suppress a gun that was discovered in Johnson's car during a search following a traffic stop for minor motor vehicle violations.  After careful review, we affirm.

Johnson was arrested on December 9, 2014, and charged with one count of carrying a firearm without a license, 18 Pa.C.S. § 6106, and one count of failing to use required turn signals, 75 Pa.C.S. § 3334.  On April 1, 2015, Johnson filed a pretrial motion to suppress the firearm, contending that it was seized during an illegal search of his vehicle.  On April 9, 2015, a suppression hearing was held.  At the conclusion thereof, the trial court issued an order granting Johnson's motion to suppress.  The Commonwealth filed a timely notice of appeal, certifying that the court's order handicaps

and/or effectively terminates the prosecution of the charges against Johnson. *See* Pa.R.A.P. 311(d). The Commonwealth also timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed an opinion on January 21, 2016.

Herein, the Commonwealth presents two questions for our review in the "Statement of the Questions Involved" section of its brief; however, it only sets forth the following, single issue in its "Argument" section: "The officer's observation of the odor of burnt marijuana coupled with [Johnson's] statement that he had a firearm in the vehicle and admission that he had no carry permit provided the officer with probable cause to enter the vehicle and seize the firearm[;] accordingly, the suppression court erred in disregarding [Johnson's] statement and in granting the motion to suppress." Commonwealth's Brief at 9.

Our standard of review of the Commonwealth's issue is as follows:

> When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012) (quoting *Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008) (citations omitted)). We also stress that "it is exclusively the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded their testimony." *Commonwealth v. Krisko*, 884 A.2d 296, 299 (Pa. Super. 2005) (citation omitted).

We begin by summarizing the evidence presented at the April 9, 2015 suppression hearing, where the Commonwealth presented one witness, Mt. Oliver Borough Police Officer Patrick Lucas. Officer Lucas testified that on December 9, 2014, at approximately 11:55 p.m., he conducted a traffic stop of Johnson's vehicle after observing Johnson's turning twice without signaling. N.T. Hearing, 4/9/15, at 5-6. Officer Lucas testified that after stopping Johnson's vehicle, he approached the driver's side door of the car. *Id.* Johnson had the driver's side window down and the officer immediately detected an odor of marijuana. *Id.* Johnson was the only occupant of the car. *Id.*

Officer Lucas testified that Johnson "did not have an identification card or driver's license on him[,]" but he did give the officer information, which the officer then ran through the computer system in his patrol car. *Id.* at 7. That check confirmed that the information provided by Johnson was accurate, and that the vehicle was registered to Johnson. *Id.* at 14-15. Officer Lucas then testified as follows:

[Officer Lucas:] I re-approached the vehicle after telling him about the odor of marijuana, and I asked him if he would step out of the vehicle.

[The Commonwealth:] Did he step out of the vehicle?

[Officer Lucas:] He did.

[The Commonwealth:] After he got out of the vehicle, what happened?

[Officer Lucas:] I advised him again of the odor of marijuana, and he stated that he did smoke marijuana earlier inside his vehicle, but he stated that he did not believe there was anything still in the vehicle, and he stated there was nothing on him as far as the marijuana.

[The Commonwealth:] Did he say anything else?

[Officer Lucas:] He did. ***I didn't ask him any more questions, and he uttered, the only thing in the car was [his] gun.***

[The Commonwealth:] At that point, once he indicated that there was a gun in the vehicle, did you ask him another question?

[Officer Lucas:] I did. I asked him if he owned a valid permit to carry a concealed firearm.

…

He stated no.

***Id.*** at 7-8 (emphasis added). Officer Lucas explained that he placed Johnson into custody based on Johnson's admissions about the gun and his lack of a permit to carry that weapon. ***Id.*** at 8. The officer then searched the vehicle and "removed a firearm from behind the passenger seat where [Johnson had] said [it] was." ***Id.***

On cross-examination of Officer Lucas, defense counsel and the officer had the following exchange:

- 4 -

[Defense Counsel:] So you come back to the vehicle, and at this point you ask [Johnson] to get out, correct?

[Officer Lucas:] I requested that he step out, yes.

…

[Defense Counsel:] At this point, you're continuing your investigation into the smell of marijuana, right?

[Officer Lucas:] Correct.

[Defense Counsel:] And marijuana you know is not legal, so you're asking him about what's potentially an illegal substance in his car, correct?

[Officer Lucas:] Correct.

[Defense Counsel:] At this point, before you ask him any questions, did you tell him he had the right to remain silent, give him any **Miranda**[1] warnings, anything like that?

[Officer Lucas:] No, not at this time.

[Defense Counsel:] You asked him about the marijuana?

[Officer Lucas:] I advised him that I smelled the odor of marijuana.

…

[Defense Counsel:] He said what you previously said about him smoking marijuana in the car, right?

[Officer Lucas:] That's correct.

[Defense Counsel:] He had no appearance that he was under the influence at that time, right?

[Officer Lucas:] Correct.

[Defense Counsel:] At that point in time, I'm assuming you're asking him -- you're continuing to ask him, you know, can we look through, right?

---

1 **Miranda v. Arizona**, 384 U.S. 436 (1966).

[Officer Lucas:] *At that point in time, I was going to perform a sweep of the vehicle because of the odor of marijuana.*

[Defense Counsel:] *But you tell him this, right?*

[Officer Lucas:] *Yes.*

[Defense Counsel:] *At that point you ask him, anything we need to know about the car before we do the sweep; fair to say?*

[Officer Lucas:] *Fair to say.*

[Defense Counsel:] *At that point, he says, just to let you know, my gun is in the car, correct?*

[Officer Lucas:] *Correct.*

*Id.* at 15-17 (emphasis added).

The trial court concluded that Officer Lucas' direct-examination and cross-examination testimony differed significantly regarding what Johnson said to the officer after he stepped out of the vehicle. *See* TCO at 4. In the court's Rule 1925(a) opinion, it summarized the pertinent differences in the officer's testimony, and explained the credibility determinations it made based on those inconsistencies, as follows:

On direct exam[ination], Officer Lucas said Johnson … said "he did not believe that there was anything still in the vehicle," and that "there was nothing on him" and, "the only thing in the car was [his] gun[.]" On cross-examination, about the same sequence of events, Officer Lucas said he "was going to perform a sweep of the vehicle[,"] Johnson was told this, he asked Johnson if we need to know anything about the car before we do the sweep, to which Johnson replied that he had a gun in the car.

There are significant differences in these two stories. Initially, Officer Lucas portrayed Johnson's comment about a gun's presence as almost an after thought [*sic*] of Johnson's. On

- 6 -

cross, the comment about a gun was in direct response to a question posed by Officer Lucas. The lack of candor by [Officer] Lucas is significant. Support comes from [Officer] Lucas' word choice. He prefaced his direct testimony with legalese. When asked if Johnson said anything else, the officer's response was - he did. But, [Officer] Lucas did not stop there. Despite answering the question in that short declarative way[] ("He did"), Officer Lucas added: "I didn't ask any more questions, and he uttered…[.]" Why was it important to []reference the lack of questioning unless the officer felt he was crossing the line. And, then he says, Johnson "uttered[.]" Who talks like that? Certainly not one who is seeking to be believed by this jurist. Bottom line, the [c]ourt believes what happened after Johnson exited the car was what was elicited on cross-examination. ***The [c]ourt found that Johnson was asked about the marijuana and was told that a search [or] "sweep" of his vehicle was going to take place. That is all.*** The [c]ourt does not believe that Johnson said: "he did not believe that there was anything still in the vehicle[,]" "there was nothing on him" and "the only thing in the car was [his] gun."

Trial Court Opinion (TCO), 1/25/16, at 4-5 (emphasis added).

On appeal, the Commonwealth interprets the trial court's ruling as finding credible Officer Lucas' testimony that he told Johnson a search of the car was going to be conducted, and that Johnson revealed, during subsequent questioning by the officer, that a gun was in the car. The Commonwealth then contends that the trial court erroneously disregarded Johnson's statements about the gun and his lack of a permit because Officer Lucas did not provide Johnson with ***Miranda*** warnings prior to Johnson's making those statements. According to the Commonwealth, Johnson was not under arrest when Officer Lucas questioned him and, therefore, no ***Miranda*** warnings were required. Consequently, the Commonwealth argues that the court should have considered Johnson's statements about the gun,

and found that Officer Lucas had probable cause to search Johnson's vehicle for that weapon.

Johnson, however, interprets the trial court's ruling differently. He maintains that the court's opinion demonstrates that it did not believe **any** of Officer Lucas' testimony about the gun. More specifically, Johnson avers that the trial court **wholly disbelieved** Officer Lucas' claims that Johnson told the officer there was a gun in the vehicle prior to the search. In support, Johnson relies on the above-emphasized portion of the court's opinion. **See** Johnson's Brief at 11.

We agree with Johnson that the language in the court's opinion indicates that the court completely rejected Officer Lucas' testimony pertaining to Johnson's statements about the gun. In particular, the court explicitly stated that **all it believed** was that Officer Lucas asked Johnson about the marijuana and told Johnson he would be conducting a 'sweep' of the vehicle. **See** TCO at 4 ("The [c]ourt found that Johnson was asked about the marijuana and was told that a search [or] 'sweep' of his vehicle was going to take place. **That is all.**") (emphasis added).

We also stress that nothing in the court's opinion indicates that it ruled in the manner suggested by the Commonwealth, *i.e.*, that the court believed that Johnson made the gun comments in response to Officer Lucas' questioning, but it did not consider those statements because **Miranda** warnings were not provided to Johnson. At no point in the court's opinion does it mention **Miranda**, let alone examine the implications of that decision

to the facts at hand. Instead, following the court's discussion of Officer Lucas' lack of credibility, quoted *supra*, the court assesses **only** whether Officer Lucas possessed probable cause to search Johnson's vehicle for marijuana. **See** TCO at 6-7. The absence of any **Miranda** analysis by the court bolsters our rejection of the Commonwealth's interpretation of the court's ruling. Instead, the record supports Johnson's claim that the court **completely** rejected Officer Lucas' testimony that Johnson said there was a gun in the car. We cannot disturb the trial court's credibility determination on appeal. **See Krisko**, 884 A.2d at 299.

Moreover, the Commonwealth has also not convinced us to reverse the court's conclusion that Officer Lucas did not possess probable cause to search Johnson's vehicle, premised only on the officer's smelling an odor of marijuana. We recognize that this Court has held "that an odor [of marijuana] **may be** sufficient to establish probable cause for a search of an automobile, which had been legitimately stopped for an unrelated vehicle code violation." **Commonwealth v. Stoner**, 710 A.2d 55, 59 (Pa. Super. 1998) (emphasis added) (citing **Commonwealth v. Stoner**, 344 A.2d 633 (Pa. Super. 1975)). Here, however, the court found that Officer Lucas' smelling marijuana was not sufficient, in and of itself, to provide him with probable cause to search Johnson's vehicle. **See** TCO at 6. The court emphasized that "Officer Lucas said Johnson did not appear to be under the influence of the drug[,]" which was "consistent with Johnson's statement that at some previous time he had smoked marijuana in the car." **Id.** The

court also noted that Officer Lucas did not observe anything inside the vehicle that would suggest the presence of marijuana, such as use paraphernalia or "remnants of recent use." *Id.* Ultimately, the trial court found that the "odor, in the absence of other incriminating circumstances, [was] not sufficient to establish probable cause." *Id.* at 7.

The Commonwealth offers **no** argument to challenge the court's conclusion that Officer Lucas did not possess probable cause based only on his smelling an odor of marijuana. Instead, the Commonwealth solely argues that the court erred by not considering Johnson's statements about the gun, which, according to the Commonwealth, provided Officer Lucas with probable cause to search Johnson's car for the firearm. For the reasons stated *supra*, we reject the Commonwealth's interpretation of the trial court's ruling, and decline to overturn the court's credibility determinations regarding Officer Lucas' testimony. Because the Commonwealth does not provide any meaningful challenge to the court's finding that no probable cause existed based only on Officer Lucas' smelling an odor of marijuana, the Commonwealth has not demonstrated that the court's order granting Johnson's motion to suppress the gun should be reversed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/22/2016