J-A06012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHAN RYAN WOLFE | : | |
| | : | |
| Appellant | : | No. 230 WDA 2025 |

Appeal from the Judgment of Sentence Entered September 20, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000901-2020

BEFORE: OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                     **FILED: April 21, 2026**

Appellant, Nathan Ryan Wolfe, appeals from the judgment of sentence entered September 20, 2024, as made final by the denial of his post-sentence motion on January 9, 2025. We affirm.

In February 2020, Appellant, "a seller of crack cocaine," acquired a supply of crack cocaine laced with fentanyl. Trial Court Opinion, 3/13/25, at 1. Appellant was aware that he had acquired a "bad batch," meaning that he understood his supply of crack cocaine contained fentanyl. *Id.* Appellant, however, proceeded to sell the tainted cocaine which subsequently caused three people to overdose, including Eric McMillen, who ingested the fentanyl-laced cocaine and died on February 5, 2020.

In the early morning hours of February 6, 2020, Kittanning Borough Police were searching for Mr. McMillen's vehicle. At approximately 1:50 a.m., Officer Michael Bartosiewicz of the Kittanning Borough Police encountered

Appellant inside Mr. McMillen's vehicle and approached him. Because Officer Bartosiewicz observed "a large amount of loose cash on the floor of the vehicle," as well as a "baggie corner in the armrest of the vehicle," he detained Appellant. Officer Bartosiewicz subsequently searched the vehicle and discovered "heroin, cocaine, cash and assorted drug paraphernalia[,] including a digital scale." *Id.* at 2-3.

The Commonwealth charged Appellant with various drug-related offenses, as well as third-degree murder. Before trial, Appellant filed an omnibus pre-trial motion to suppress. In his motion, Appellant argued that, during the initial encounter with Officer Bartosiewicz, he was subjected to an unconstitutional detention that warranted the suppression of all evidence recovered during the subsequent search of the vehicle. A suppression hearing was held on February 27, 2023, during which Officer Bartosiewicz testified. On January 12, 2024, the trial court denied Appellant's motion.

The matter proceeded to a jury trial on July 9, 2024. Ultimately, the jury convicted Appellant of third-degree murder, drug delivery resulting in death, aggravated assault, involuntary manslaughter, criminal use of a communication facility, four counts of possession with intent to deliver a controlled substance, two counts of possession of a controlled substance and six counts of possession of drug paraphernalia.[1] On September 20, 2024, the trial court sentenced Appellant to an aggregate term of 25 to 50 years'

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2506(a), 2702(a)(1), 2504(a), 7512(a), 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 780-113(a)(32), respectively.

incarceration.  Appellant filed a post-sentence motion on September 30, 2024,

which the trial court denied on January 9, 2025.  This appeal followed.[2]

---

[2] On February 7, 2025, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b).  Hence, Appellant's Rule 1925(b) concise statement was due on or before February 28, 2025.  Appellant, however, did not file his Rule 1925(b) concise statement until March 3, 2025.  Ordinarily, the "failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised."  *Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (citation omitted); *see also Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (explaining that an untimely concise statement waives all claims on appeal); *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("[F]rom this date forward ... [a]ppellants must comply whenever the trial court orders them to file a [s]tatement of [errors] [c]omplained of on [a]ppeal pursuant to Rule 1925.  Any issues not raised in a 1925(b) statement will be deemed waived.").

Importantly, however, Rule 1925(c)(3) of the Pennsylvania Rules of Appellate Procedure states:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a [concise s]tatement and either failed to do so, or untimely filed or served a [concise s]tatement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a [concise s]tatement *nunc pro tunc*, and the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3); *see Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (declining to find the appellant's claims waived on appeal in view of Pa.R.A.P. 1925(c)(3)).

In this instance, we determine that Appellant's counsel, by failing to file a timely 1925(b) statement, was *per se* ineffective.  We, however, decline to remand this matter for the preparation of a trial court opinion and will address the merits of Appellant's claims because the trial court issued a Rule 1925(a) opinion in this matter.  *See Commonwealth v. Andrews*, 213 A.3d 1004, 1010 (Pa. Super. 2019) (declining to find the appellant's claims waived

*(Footnote Continued Next Page)*

Appellant raises the following issues for our consideration.

1. Did the trial court err[] in denying [Appellant's] motion to suppress as [the] evidence [] seized was the result of an unlawful seizure[?]

2. Did the trial court err[] in denying [Appellant's] post-sentence motion averring that insufficient evidence existed to sustain a verdict for [third-degree murder]?

3. Did the trial court err[] in denying [Appellant's] post-sentence motion averring the verdict of [third-degree murder] was against the weight of the evidence?

Appellant's Brief at 6-7 (unnecessary capitalization omitted).[3]

In his first issue, Appellant argues that the trial court erroneously denied his suppression motion. The trial court herein denied Appellant's suppression motion because it determined that the initial interaction between Officer Bartosiewicz and Appellant amounted to nothing more than a mere encounter. Trial Court Opinion, 3/15/25, at 12. In support of this conclusion, the trial court cited the fact that Officer Bartosiewicz "never activated lights or siren[s]" or "used his public address system," and "did not block [Appellant's] vehicle with the police car." *Id.* Instead, Officer Bartosiewicz "simply walked up to [Appellant in Mr. McMillen's ] car and began to speak with him." *Id.* Since it "was from this vantage point" that Officer Bartosiewicz "could see the cash and the [corner of the] plastic baggie," the trial court determined that

_____

pursuant to Pa.R.A.P. 1925(c)(3) and declining to remand to the trial court because the trial court addressed the issues raised in the appellant's untimely 1925(b) statement).

[3] We have reordered the issues presented by Appellant on appeal for ease of discussion and disposition.

- 4 -

Appellant's subsequent seizure and the search of the vehicle were also constitutionally valid. *Id.*

On appeal, Appellant challenges the trial court's determination that the initial encounter between Appellant and Officer Bartosiewicz constituted a mere encounter. Appellant's Brief at 21. Appellant instead contends that the officer's initial approach constituted a detention since a reasonable person would not have felt free to leave. Here, Appellant notes that Officer Bartosiewicz restricted his ability to depart and displayed force during his approach by issuing commands. Thus, Appellant concludes, "all evidence derived from [the] seizure [constituted] fruit of the poisonous tree and [was] subject to the exclusionary rule." *Id.* at 27.

Our standard of review for an order denying a motion to suppress is well established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (quotation

omitted).

Under Pennsylvania law, there are three categories of police-citizen

interactions. As our Supreme Court has clearly articulated:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012),

*appeal denied*, 48 A.3d 1247 (Pa. 2012) (quotation omitted). Further, this

Court previously explained:

> [t]o determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1201-1202 (Pa. Super. 2002)

(internal citations omitted).

The testimony elicited at the suppression hearing revealed the following. In the early morning hours of February 6, 2020, Officer Bartosiewicz was on duty and made aware of a "be on the lookout" ("BOLO") for a black Chevy Impala which belonged to Mr. McMillen. N.T. Hearing, 11/27/23, at 11. At approximately 1:50 a.m., Officer Bartosiewicz encountered the vehicle at the intersection of North Grant and Reynolds Avenue in Kittanning, Pennsylvania. Officer Bartosiewicz proceeded to follow the vehicle, which drove in a "big circle," but eventually proceeded back to Reynolds Avenue and parked in front of the Hot Spot Hotel & Lounge. *Id.* at 15. Officer Bartosiewicz circled the block one more time, pulled up behind the vehicle, exited the patrol car, and proceeded to approach Appellant, who was in the front passenger's seat of the vehicle. Officer Bartosiewicz did not activate his lights, sirens, or administer any commands at this time. When Officer Bartosiewicz approached, Appellant exited the vehicle, stood "between the door and the vehicle with the door open on the front passenger side," and began to yell at Officer Bartosiewicz. *Id.* at 20. In response, Officer Bartosiewicz advised Appellant that he "wanted to speak with him due to the fact that he [was] inside of a BOLO vehicle with [a deceased individual as] the registered owner." *Id.* at 18. Officer Bartosiewicz also asked Appellant to "keep [his] hands out of [his] pockets" because Appellant "had his hands in his pockets and [] was acting sort of in an aggressive manner." *Id.* at 19. During this interaction, Officer Bartosiewicz observed "a bunch of money on the floorboard" of the vehicle and "a corner baggie in the passenger door." *Id.* at 21. At that point, Officer Bartosiewicz

detained Appellant and proceeded to seize "the items in plain view," *i.e.*, the money and baggie. *Id.* at 22. Officer Bartosiewicz then searched the vehicle and discovered additional drug paraphernalia. Ultimately, the Kittanning Borough Police towed the vehicle, obtained a warrant, and searched the vehicle.

We agree with the trial court's assessment that the initial interaction between Officer Bartosiewicz and Appellant constituted a mere encounter. It was firmly established during the suppression hearing that, after encountering the Chevy Impala, Officer Bartosiewicz followed it but did not initiate a traffic stop. After the vehicle parked in front of the Hot Spot Hotel & Lounge, Officer Bartosiewicz pulled up behind it. Officer Bartosiewicz did not block the vehicle with his patrol car. Instead, he parked his patrol car "behind the vehicle kind of like staggered" and "off its left quarter panel." N.T. Hearing, 11/27/23, at 17. Officer Bartosiewicz did not activate his lights, sirens or administer any commands. Thereafter, Officer Bartosiewicz approached Appellant and "started speaking to [Appellant] when he was getting out of the car," which Appellant did of his own volition, without prompting by Officer Bartosiewicz. "Both the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure." *Commonwealth v. Coleman*, 19 A.3d 1111, 1116 (Pa. Super. 2011). While Officer Bartosiewicz subsequently asked Appellant to keep his hands out of his pockets during the interaction, our case law confirms that this, too, is insufficient to elevate the encounter to an investigative detention.

*See Commonwealth v. Carter*, 779 A.2d 591, 594 (Pa. Super. 2001) (explaining that, "if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct.") (citation omitted). The totality of the circumstances therefore demonstrates that the initial interaction between Officer Bartosiewicz and Appellant constituted a mere encounter and, as such, the trial court did not err in denying Appellant's motion to suppress.[4]

In his second issue, Appellant claims that the Commonwealth failed to present sufficient evidence to sustain his conviction for third-degree murder. More specifically, on appeal, Appellant claims there was insufficient evidence demonstrating that he acted with malice.

Before reaching the merits of Appellant's claim, we must determine whether it is preserved for our review. This Court has repeatedly held that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was

_____

[4] Appellant challenges only the trial court's assessment of the initial interaction with Officer Bartosiewicz. Appellant does not challenge Officer Bartosiewicz's subsequent search of Mr. McMillen's vehicle.

- 9 -

insufficient." ***Commonwealth v. Ellison***, 213 A.3d 312, 320-321 (Pa. Super. 2019) (quotation omitted). "Such specificity is of particular importance in cases where, as here, [the appellant] was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Id.*** at 321. (quotation omitted). If an appellant's Rule 1925(b) statement fails to "specify the allegedly unproven elements[,] . . . the sufficiency issue is waived on appeal." ***Commonwealth v. Tyack***, 128 A.3d 254, 260 (Pa. Super. 2015) (quotation omitted).

Here, Appellant's Rule 1925(b) concise statement sets forth the following claim of error: "The trial court erred by denying [Appellant's] motion for judgment of acquittal pursuant to Pa.Crim.P. 606 on the ground that the evidence presented was not legally sufficient to support the verdicts." Appellant's Rule 1925(b) Concise Statement, 3/3/25, at ¶ 1 (unnecessary capitalization omitted). As recognized by the trial court, Appellant's "allegations of error are boilerplate legal conclusions, without any specifics whatsoever" which "required [the trial court] to guess which elements or verdicts are at issue, out of [17] guilty verdicts." Trial Court Opinion, 3/13/25, at 5. Appellant, however, submitted an oral motion for judgment of acquittal during trial and a post-sentence motion in which he specifically challenged the sufficiency of the evidence supporting his conviction for third-degree murder, claiming that the Commonwealth failed to demonstrate malice. ***See*** N.T. Trial, 7/11/24, at 46 (Appellant's counsel stating: "I am moving on all charges, but I would also move the [c]ourt for a judgment of acquittal on the third[-]degree

- 10 -

murder [charge]. While the factual issues exist, the defense would argue malice has not been proven in this case."); **see also** Appellant's Post-Sentence Motion, 9/30/24, at ¶ 8 ("Petitioner respectfully avers that the Commonwealth did not establish beyond a reasonable doubt the crimes of [which] he was convicted of. Most notably, the crime of murder of the third degree.") (unnecessary capitalization omitted). Accordingly, despite the fact that Appellant's Rule 1925(b) statement perilously fails to identify a specific element of a specific conviction, we will address Appellant's claim.

Whether evidence is sufficient to support a conviction presents this Court with a question of law and, thus, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa. Super. 2019) (quotation omitted). This Court examines:

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Id.* at 300–301 (citation omitted).

- 11 -

In order to sustain a conviction for third-degree murder, the Commonwealth must demonstrate that the defendant killed another with malice aforethought. *Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013). Importantly, malice "has been characterized as exhibiting an 'extreme indifference to human life'" but may exist "in an unintentional homicide where the perpetrator 'consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" *Commonwealth v. Ludwig*, 874 A.2d 623, 632 (Pa. 2005) (internal citations and emphasis omitted).

Here, the Commonwealth presented evidence that "[Appellant] knew the crack cocaine was laced with fentanyl two days before he gave the crack cocaine to . . . Mr. McMillen." Trial Court Opinion, 3/13/25, at 7. In particular, Crystal Toy testified:

> Two days before [February 5, 2020, Appellant] was over at the house and, you know, pulled out a baggie and said, "Look[,] they gave me shit with fenny in it." Excuse my language. Me and [Mr. McMillen] both were like adamant, "We don't want that." …. [Mr. McMillen] only ever tried it once and didn't like it. [We told Appellant:] "If that is all you have, we don't want it" and we didn't get nothing.

N.T. Trial, 7/9/24, at 95. Thus, the Commonwealth presented evidence that, even though Appellant knew the crack cocaine was laced with fentanyl and, even though Appellant knew that Mr. McMillen didn't regularly use fentanyl, Appellant supplied Mr. McMillen with the tainted drugs in conscious disregard of the unjustifiable risk it posed. Such evidence was sufficient to demonstrate

Appellant acted with malice.  ***See Ludwig***, 874 A.2d at 633-634 (explaining that evidence that a defendant concealed a different dosage of drugs or surreptitiously increased a drug dosage may be "indicative of a wickedness, hardness of heart, cruelty and recklessness" and, as such, demonstrates malice); ***see also Commonwealth v. Busbey***, 2020 WL 865044 *1, *5 (Pa. Super. 2020) (non-precedential decision) (explaining that the appellant's awareness that the victim was "narcotics-naïve" was sufficient to demonstrate that the appellant acted with malice related to the victim's death.).  Hence, Appellant's claim fails.

In his final issue, Appellant challenges the weight of the evidence supporting his conviction for third-degree murder.  Appellant, however, "attempts to support his challenge to the weight of the evidence by incorporating the arguments he had set forth in the portion of his brief pertaining to [the] sufficiency of the evidence."  ***Commonwealth v. Sexton***, 222 A.3d 405, 416 (Pa. Super. 2019); ***see also*** Appellant's Brief at 20 ("For the reasons outlined in [the section of Appellant's brief challenging the sufficiency of the evidence,] the verdict of [t]hird-[d]egree [m]urder was against the weight of the evidence as the [trial] court committed a legal error by deriving the element of malice in Appellant's actions.").  In so doing, Appellant not only conflates weight and sufficiency challenges, Appellant fails to adequately develop his challenge to the weight of the evidence.  "It is Appellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court that there were

errors below, and convince us relief is due because of those errors. If an appellant does not do so, we may find the argument waived." ***Sexton***, 222 A.3d at 416 (quotation omitted). Therefore, Appellant's challenge is waived.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

4/21/2026